Pearson, J.
 

 The bill is filed to obtain a,construction of two clauses in the will of James Smith.
 

 
 *541
 
 The first is in these words: “In the seventh place, I leave with my daughter-in law, Jane Smith, my negro Ambrose, to work for her and Ebenezer’s four children’s support, until the youngest one arrives at the age of seventeen, then tq be sold, and the money to be equally divided amongst them all, share and share alike ”
 

 When the will was executed, Ebenezer, a son of the testator, was dead, leaving his widow, Jane, and four children, Margaret, Nancy, Ann Eliza, and Susan, who was the youngest. Ann Eliza died in the life time of the testator ; and one question is, who is entitled to the share that was intended for her ? No cross remainders aré limited in them expressly or by implication. The gift is not to the children ; but to the
 
 four children,
 
 of Ebenezer; and is just as definite, as if the children had been separately named over. It is therefore clear, that the share intended for Ann Eliza lapsed by her death, and is to be administered by the executor as an undisposed of fund.
 

 The next question ; Is Jane, the widow of Ebenezer, entitled to a share of the money, for which the slave may be sold? The words, “the money to be equally divided amongst them
 
 all,
 
 share and share alike,” are broad .enough, and we have no doubt include the widow. She is entitled to an original share of one fifth;
 

 Susan, who was the youngest child, died sorne years after the testator, but before she arrived at the age of seventeen. Two questions are made : — What becomes of her share ? It was clearly a vested legacy, and her administrator succeeds to it. At what time should Ambrose be sold ? The executor insists, that upon the death of Susan, the sale and division ought to have been made immediately. The defendant Owen, who has since intermarried with the widow, insists, that the sale should not be made, until^uch time as Susan would have been seventeen years of age, had she lived, on the ground that a par
 
 *542
 
 ticular
 
 estate
 
 was limited until that time. We do not adopt either construction ; and it seems to us obvious, that the sale and division should be made when Nancy, who is now the youngest child, arrives at the age of seventeen. The testator did not fix on either of the children. as the one whose age should limit the particular estate. His purpose w'as to give them the services of the negro man, as long as they required it as a means of making a support, which he thought would be until the youngest arrived at the age of seventeen.
 

 The sale was postponed with a view to a particular purpose, and when that was accomplished by the arrival to the specified age of all the objects of his bounty, except such as died and could no longer stand in need of it, there ceased to be any reason for postponing the sale and division.
 

 Secondly.
 
 The eighth clause is in these words: “I give to Alexander two tracts of land, one called, &c. I enjoin it on him to pay to each of Ebenezer’s four children,fifty dollars to each child, as they arrive at the age of sixteen ; then the said land will be his right and property, to him and his heirs forever.”
 

 Susan died before she arrived at the age of sixteen; and the question is, whether she had a vested right to the sum of fifty dollars, charged on the land, to which the personal representative succeeds ? Or does this charge, upon her death, before
 
 the
 
 required age,
 
 sink into the
 
 land in favor of the devisee ? A legacy is a gift of a part of the personal estate, which is passed by the will to the executor, who is directed to deliver it over to the legatee ; and to prevent legacies from falling into the residuum, and being treated as a part of the personal estate, which, upon the death of the intended object of the bounty before arriving at the age required, would be undisposed of, the ecclesiastical Courts made a distinction between such legacies as were vested in interest, although the time of
 
 *543
 
 enjoyment was future, and such as were purely contingent, and did not vest unless a certain eyent happened ; and, in the construction of legacies properly so called, Courts of equity, when assuming a concurrent jurisdiction, felt bound to follow the rules laid down in the Ecclesiastical Courts: adopting all the nice distinctions between gifts, “when,” pif” or “provided,” and present gifts with an enjoyment in future or the
 
 payment
 
 of which only w'as deferred. The fifty dollars in this case, if a personal legacy, would be of the latter description ; and would, like the share of Susan in the proceeds of the sale of Ambrose, pass to her personal representative. But it is not a legacy. It is a charge upon the real estate, and, therefore, cannot pass over and become a part of the personal estate, upon the death of the person, for whom it was so intended, before the happening of the event, her arriving at the age of sixteen. It is a trust, which is enforced in equity. But since the death of the party, who would have been entitled to enforce it, before the required age, there is no one who can call for it; and the devisee is allowed to hold the land free of the charge. This doctrine is well settled. 1
 
 Roper on Legacies,
 
 431—432, and the cases cited.
 

 The same reasons apply with equal, if not more, force, to the fifty dollars intended l'or Ann Eliza, who died in the testator’s life time. It is not a lapsed legacy, as if it were a part of the personal estate ; but it sinks into the land for the benefit of the devisee, as the condition upon which it was to vest has not happened.
 

 The decree will declare the opinion of the Court, upon the several matters referred to, as herein before stated. The costs must be paid by the executor out of the funds, so as to divide it
 
 pro rata
 
 among the parties interested.
 

 Per Curiam.
 

 Decreed accordingly.